# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TONI L. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 9380 |
| | ) | |
| THE WOMEN'S TREATMENT CENTER, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Toni Jackson has sued her former employer, The Women's Treatment Center Inc. (WTC), under the Americans with Disabilities Act, 42 U.S.C. § 12101. Jackson claims that WTC fired her because she suffers from chronic depression and that WTC failed to reasonably accommodate her disability. WTC has moved for summary judgment. For the following reasons, the Court denies WTC's motion.

## Facts

The Women's Treatment Center provides residential substance abuse treatment to women who are addicted to drugs or alcohol. In August 2001, WTC hired Jackson as a senior counselor, a job which required her to monitor women and children living in the facility and report any problems they had to WTC's director.

In November 2001, Jackson saw her treating physician, Dr. Mandiver Singh, and complained of severe depression. Singh referred her to a hospital emergency room because she appeared suicidal, and she took the next two weeks off work. When she returned on December 10, 2001, she says she gave her supervisor, Annie Ison, a note from Dr. Singh that said, "Toni

Jacson [sic] is under my care for the following: depression and will return to work on 12-10-01. [Patient] has been off since 11-27-01." *See* Ison Dep. at Ex. 2. Jackson claims that she presented the note to Ison and that Ison said, "I knew something was wrong with you." Jackson Dep. at 48. Jackson also says she discussed her depression with Ison over the telephone some time after December 2001.

In April 2002, Jackson says she told Ison that she was feeling stressed out at work. In May 2002, Jackson began receiving mental health treatment from Christopher Rhone, a licensed clinical professional counselor, to whom Jackson was referred by WTC's Employee Assistance Program. On June 5, 2002, after Jackson left work, she claims that her arm began to tingle and go numb and that she felt like she was going to pass out. She says that the next day, she called Ison and another supervisor, Valerie Smith, and requested a one-month medical leave. She claims that Ison instructed her to fill out a request for leave form, which she received in the mail around June 11, 2002 and completed and returned shortly after June 24, 2002.

At the WTC, supervisors like Ison provide each clinical staff member with a minimum of four hours of direct clinical supervision per month. On June 13, 2002, Jackson went to WTC to pick up her paycheck, and while she was there, she had a clinical supervision meeting with Ison. After the meeting was over, Jackson claims that Ison gave her a copy of a form summarizing the topics discussed at the meeting. The contents of that form are now the point of some contention, because the parties have produced two different versions. Jackson's copy has five numbered points, and WTC's copy has six. The sixth point says, "Ms. Jackson stated she will return to work on 6/16/02." Jackson maintains that she never told Ison she would return to work on June 16, 2002 and that Ison dishonestly and unfairly added this sentence to fabricate a reason for

2

Jackson's termination.

On June 18, 2002, WTC mailed Jackson a certified letter informing her that she had been terminated because she did not come to work on June 16, 2002. On July 5, 2002, WTC mailed Jackson a letter denying Jackson's request for medical leave. The letter said that the WTC stood by its decision to terminate Jackson because she did not show up for work on June 16, 2002.

**Discussion**

The ADA provides disabled persons with two principal workplace rights. The first prohibits employment discrimination against a qualified individual with a disability. 42 U.S.C. § 12112(a). The second requires employers to provide reasonable accommodations to individuals with a disability who are otherwise qualified to perform their job. 42 U.S.C. § 12112(b).

WTC argues that Jackson did not include the second theory of liability in her complaint. The Court disagrees. Jackson's complaint alleges, "Defendants have engaged in unlawful employment practices in violation of . . . 42 USCA § . . . 12112(b)(5)" and, "These practices include . . . [d]efendants discharge of Jackson based on the need to make reasonable accommodations to her possible future impairments." These statements were sufficient to notify WTC that Jackson was asserting a claim based on WTC's failure to accommodate.

1.  **Disability discrimination**

To establish a *prima facie* case of disability discrimination, Jackson must show that she is disabled within the meaning of the ADA; she is qualified to perform the essential functions of her job either with or without reasonable accommodation; and she suffered an adverse employment action because of her disability. *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002). If Jackson establishes a *prima facie* case, the burden shifts to WTC to

3

produce a non-discriminatory reason for the adverse employment action. *Id.* If WTC satisfies this burden, the inference of discrimination disappears, and Jackson must prove by a preponderance of the evidence that WTC's proffered reason is a pretext for intentional discrimination. *Id.*

WTC argues that Jackson has not offered evidence that she is disabled, that she was qualified to perform her job, or that WTC's stated reason for firing Jackson was pretextual. Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

WTC contends that Jackson is not disabled, because she admitted in her deposition that in June 2002, she was able to dress herself, walk unassisted, perform household chores, and prepare her own meals. See Jackson Dep. at 37-38. Though it is true that Jackson admits she could perform these daily functions at all relevant times, Jackson does not argue that she is disabled in these major life activities. Rather, she argues that she is disabled in the major life activity of working. To support this argument, Jackson has offered evidence that her severe depression precluded her from working in any capacity from November 27, 2001 to December 10, 2001, *see* Singh Dep. at 85, and from June 6, 2002 until July 6, 2002. *See* Rhone Dep. at 125 & Ex. 11. If a jury believed this evidence, it could reasonably find that Jackson's depression substantially limits her in the major life activity of working. *See Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 600 (7th Cir. 1998) (holding that jury could find plaintiff was disabled where plaintiff's lupus intermittently "flared up," preventing her from working in any

4

capacity).[1]

WTC argues that Christopher Rhone's testimony that Jackson's depression prevented her from working should be excluded, because Rhone is not qualified to determine whether Jackson's illness is disabling. The admission of expert testimony is governed by Rule 702 of the Federal Rule of Evidence and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). According to the Seventh Circuit, the Court first must determine whether the expert's testimony is reliable by assessing whether the expert is qualified in the relevant field and by examining the expert's methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The Court must then determine if the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue in the case. *Id.* WTC argues only that Rhone is not qualified in the relevant field.

Rhone is a certified "clinical licensed professional counselor," which, under Illinois law, allows him "to assist individuals, couples, families, groups, and organizations to alleviate emotional disorders, to understand conscious and unconscious motivation, to resolve emotional, relationship, and attitudinal conflicts, and to modify behaviors that interfere with effective emotional, social, adaptive, and intellectual functioning." 225 ILCS 107/10. In addition, he has conducted individual outpatient psychotherapy for the past five years and has taught abnormal psychology at a local college for two and a half years. Given Rhone's experience and

---

[1] WTC argues that Jackson is not disabled because she admitted that her depression is under control when she takes her medication. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482-83 (1999). This is a mischaracterization of Jackson's testimony. She actually stated that medication "somewhat" controls her depression. Jackson Dep. at 42. This equivocal answer is sufficient to create an issue of material fact as to whether Jackson is disabled when she takes her medication.

professional certification, the Court is confident that he is qualified to offer an expert opinion about whether Jackson's mental illness, as diagnosed by an actual doctor, prevented her from working for a certain period of time. *See U.S. v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999) (holding that social worker was qualified to offer expert testimony that defendant caused victim's depression and suicidal ideations). If WTC has qualms about the methodology that Rhone used to render his opinion (WTC did not make this argument in its briefs for this motion), it may seek to exclude the testimony on that basis before trial.

WTC next argues, citing its policy of not allowing employees to report for work under the influence of drugs or alcohol, that Jackson was not "qualified" to perform her job as required by the ADA, because she was being treated for alcohol detoxification on July 6, 2002, the day she was supposed to return to work. The Court rejects WTC's argument. As Jackson correctly points out, "[w]hether or not an individual meets the definition of a qualified individual with a disability is to be determined as of the time the employment decision was made." *See Bay v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000) (citing *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). Jackson was terminated on June 18, not on July 6. She has offered evidence that on June 18, she was qualified to perform her job with the reasonable accommodation she requested – a one month medical leave. In any event, Jackson was released from the hospital on July 6, 2002, without any alcohol in her system. *See* Singh Dep at Ex. 10.

WTC also argues that Jackson has not offered evidence that its stated reason for terminating Jackson, her failure to appear for work on June 16, 2002, was pretextual. To meet her pretext burden, Jackson must do more than offer evidence that WTC's proffered reason was

6

wrong or demonstrated poor business judgment. *Green v. Natl. Steel Corp., Midwest Div.*, 197 F.3d 894, 899 (7th Cir. 1999). Specifically, she must offer evidence from which a jury reasonably could find that WTC's reason was not the real reason for its actions. Jackson has met her burden. She has offered evidence suggesting that Ison, dishonestly and without Jackson's knowledge or consent, added a sentence to Jackson's clinical supervision form stating that Jackson agreed to return to work on June 16, 2002.[2] If a jury believed this evidence, it could reasonably conclude that WTC fired Jackson not because she failed to return to work, but because of some other reason that Ison concealed.

   2.   **Failure to accommodate**

An employer must reasonably accommodate the known mental or physical limitations of its disabled employees, unless doing so would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A); *Beck v. Univ. of Wisc. Bd. of Regents,* 75 F.3d 1130, 1134 (7th Cir. 1996). An employee has the initial duty to inform her employer that she is disabled and that she requires an accommodation. *See EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005). "Thereafter, the employer and the employee must work together through an 'interactive process' to determine the extent of the disability and what accommodations are appropriate and available." *Id.* at 804. "Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability requires an accommodation, the employer must ask for clarification." *Id.*

Jackson claims that WTC failed to reasonably accommodate her disability or engage in

---

[2] It makes no difference that Ison did not make the decision to fire Jackson, where, as here, Jackson has offered evidence that Ison's allegedly discriminatory actions affected the decision-making process. *See Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990)

the interactive process, after she requested a one-month unpaid leave of absence. WTC does not argue that Jackson's request imposed an undue hardship. Instead, WTC maintains that Jackson has not offered evidence indicating that WTC knew Jackson was disabled. The Court disagrees. Jackson has offered testimony that she gave Ison a doctor's note explaining that she missed two weeks of work because she was being treated for depression; testimony that she discussed her depression with Ison over the telephone some time after December, 2001; and testimony that she asked Ison, on June 6, 2002, if she could go on medical leave because she felt overworked and stressed out.

Given this evidence, a jury reasonably could find that Jackson informed WTC that she was disabled and requested a reasonable accommodation, thus triggering WTC's obligation to ask for clarification. Though WTC makes much of the fact that Jackson said she need to take leave because she was stressed-out and not because she was depressed, it makes no difference, for purposes of this motion, whether Jackson used the words "depressed," "disability," or "reasonable accommodation" when she requested medical leave. *See Bultemeyer v. Fort Wayne Community Schs.,* 100 F.3d 1281, 1285 (7th Cir. 1996) ("[A]n employer cannot expect an employee to read its mind and know that he or she must specifically say 'I want a reasonable accommodation,' particularly when the employee has a mental illness.").

## Conclusion

For the foregoing reasons, the Court denies WTC's motion for summary judgment

[docket no. 52]. The case is set for status hearing on May 30, 2006 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 9, 2006